UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ALEXSAM, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 2:10-cv-00093-MHS-CMC |
| § | (Eastern District of Texas) |
| BEST BUY STORES LP, BARNES & NOBLE, § | |
| INC., BARNES & NOBLE MARKETING SERVICES § | The Honorable Michael H. Schneider |
| CORP., THE GAP, INC., DIRECT CONSUMER § | |
| SERVICES, LLC, HOME DEPOT U.S.A., INC., § | Magistrate Judge Caroline M. Craven |
| HOME DEPOT INCENTIVES, INC., J.C. PENNEY § | |
| COMPANY, INC., J.C. PENNEY CORPORATION, § | |
| INC., MCDONALD'S CORPORATION, P2W, INC. § | |
| NFP, TOYS "R" US, INC., and TRU-SVC, § | |
| LLC, § | |
| § | |
| Defendants. § | |

**ALEXSAM'S MOTION TO COMPEL DOCUMENT PRODUCTION
AND A THIRD PARTY DEPOSITION FROM FIRST DATA
PURSUANT TO RULE 45 SUBPOENA**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**I.      INTRODUCTION**

Plaintiff Alexsam, Inc. ("Alexsam") and the Defendants in this case are engaged in patent litigation in the Eastern District of Texas. The patents in suit involve systems and methods used for transactions involving prepaid cards, primarily gift cards that operate much like credit and debit cards and are widely sold in large grocery chains and pharmacies, employing much of the same computer network infrastructure. Alexsam alleges that the Defendants infringe specified claims of its two patents. (Exs. 1 and 2.)

First Data Corporation ("First Data") is the largest card processor in the United States, according to published data. (Ex. 3.) First Data, including through its ValueLink and other wholly-owned subsidiaries, provides processing services for, among other things, gift card transactions. Two of the Defendants in the underlying case (Best Buy Stores LP ("Best Buy") and McDonald's Corporation ("McDonalds")) have outsourced gift card processing to First Data. McDonalds sends all of its credit, gift, and debit card transactions to First Data, which then routes those transactions to different systems within First Data. The same is believed to now be true for Best Buy, although the discovery now at issue will assist Alexsam to verify those details. First Data is also the bank card processor for a third defendant, Toys "R" Us, Inc. ("Toys R Us"), a role it assumed after acquiring the merchant processing portions of several banks.

As a result of its unique role in administrating the McDonalds and Best Buy gift card processing, and in its closely-related position as a merchant banker for Toys R Us, First Data is in possession of significant relevant factual information related to the systems accused of infringing the Alexsam patent claims (as well as material information relating to Alexsam's damages contentions) that Alexsam cannot obtain directly from the Defendants.

On July 31, 2012, Alexsam served First Data with a subpoena seeking documents and a deposition pursuant to Rule 45. (Exs. 4 and 5.) Acknowledging the relevance of its systems,

1

First Data agreed to produce its contracts with McDonalds and Best Buy for processing gift cards. (Ex. 6 at requests 1, 8.) However, First Data purported to make itself the judge of relevance of other requested information and has refused to produce any other documents. First Data has also sought to limit the deposition topics requested by Alexsam to these agreements.

First Data is, upon information and belief, more than simply a third party to this case. Alexsam believes that First Data may be indemnifying McDonalds and Best Buy for the costs of this litigation. The record of the correspondence between Alexsam and First Data also suggests that Defendants have inserted themselves directly into Alexsam's duly served third-party discovery, have solicited First Data to adopt their own theories as to matters relevant to the case, and have made unfounded relevance objections in response to Alexsam's subpoenas.

## II.     BACKGROUND FACTS

### A.     First Data

First Data has a complicated corporate structure. First Data's ValueLink subsidiary offers processing services for gift card transactions and maintains databases of gift card information. All types of payment cards (whether ordinary credit cards, debit cards, or prepaid cards of multiple types, such as gift and phone cards) transmit card data into vast financial networks via a point of sale device at a retail store. When gift cards, specifically, are activated at the point of sale, the point of sale devices are connected to highly complex computer networks linking to multiple financial institutions via each retailer's own in-store back-office computer serving the entire store chain. First Data is part of this vast financial computer network. For gift card transactions, the Best Buy and McDonalds networks transmit gift card data from their own retail stores, through their own computers, then to First Data and back. The gift card transactions include activations, reloads, and redemptions.

First Data has also acquired several bank entities (which are part of First Data's own computer network, and part of the much broader system of computer networks linking financial institutions), and is continuing to operate them as banks. In 2004, for example, First Data acquired Concord EFS National Bank, a provider of bank card processing services. According to its SEC form 10-K, in 2009 First Data began a joint venture with Bank of America called Banc of America Merchant Services, another provider of bank card processing services. (Ex. 7.) First Data also operated NTB Bank and NTB Merchant Services as a joint venture with the Northern Trust Bank. (Exs. 8, 9.)

### B. The Alexsam Patent Claims

The Alexsam patents-in-suit are generally directed to systems and methods relating to prepaid cards. The patents describe various types of cards (*e.g*., gift, phone, debit, and loyalty cards) and systems and methods for using, activating and/or recharging these cards. The claims at issue in this case relate to "electronic gift certificate cards" (*e.g*., Ex. 1, '608 patent, claims 1, 34) and prepaid debit cards (*e.g., id*. at claim 60).

The asserted patent claims disclose a processing hub computer, which acts as the "nerve center" of the system, performing a variety of functions, such as managing account data and processing activation, recharge and other transaction types. The processing hub uses a variety of databases depending on the transaction type. Some claims in the '787 patent refer to the processing hub as a "gift certificate card computer," which serves similar functions in the context of managing accounts associated specifically with gift cards (in contrast with other types of prepaid cards such as phone cards). Among other things, Alexsam contends that systems within First Data (including those at ValueLink) act as processing hubs for McDonalds and Best Buy.

The inventions of the asserted claims of the Alexsam patents encompass the idea of using existing infrastructure and networks, including standard bank card and credit card networks, to activate gift cards. As part of this invention, Alexsam's inventor coined the term "bank processing hub computer," and the asserted patent claims also disclose the use of a "banking network" to conduct gift card transactions.

As an example, claim 1 of Alexsam's '787 patent claims:

1. A multifunction card system, comprising:

a. at least one electronic gift certificate card having a unique identification number encoded on it, said identification number comprising a bank identification number approved by the American Banking Association for use in a banking network, said identification number corresponding to said multifunction card system;

b. *a bank processing hub computer under bank hub software control and in communication over a banking network* with a pre-existing standard retail point-of-sale device, said bank processing hub computer receiving electronic gift certificate card activation data when said electronic gift certificate card is swiped through said point-of-sale device, said electronic gift certificate card activation data comprising said unique identification number of said electronic gift certificate card and an electronic gift certificate activation amount; and

c. a gift certificate card computer under gift certificate card software control and in communication with said bank processing hub for activating a gift certificate card account in a gift certificate card database corresponding to said electronic gift certificate card, said gift certificate card account comprising balance data representative of an electronic gift certificate activation amount.

(Ex. 2, '787 patent, cols. 11, lns. 47- 12 lns. 4) (emphasis added).

In pretrial "*Markman*" proceedings[1], the Texas Court construed "bank processing hub computer" to mean "a computer, other than a processing hub, *that is maintained by a bank*, that facilitates the card transaction and that is remote from the pre-existing standard retail point-of-sale device." (Ex. 10 at 22 (emphasis added).) The Court specifically rejected Defendants' proposed constructions requiring the "bank processing hub computer" to be "at a bank" or

---

[1] *Markman v. Westview Instrs.*, 517 U.S. 370 (1996).

"owned and operated" by a bank. (*Id*. at 20.)  The question as to whether the Defendants' gift card systems, incorporating the computer infrastructure provided to the Defendants by contract with First Data, include a "bank processing hub computer" is a central and disputed issue in the instant litigation.

It is undisputed that Defendants' systems use the same computers and software to route and process gift, credit, and debit card transactions, from the point of sale terminal to multiple back office servers.  Because of the Court's construction of "bank processing hub computer" to mean "a computer … that is maintained by a bank," one relevant factual question in the instant case is how banks and banking entities, including those recently acquired by First Data, "maintain" such common computers in Defendants' systems.  The discovery now at issue is intended to marshal evidence relating to that very issue, including (for example) by integrating with them, updating them, monitoring them, managing them, imposing technical requirements on them, and the like.  Here Alexsam contends that computers within First Data are "bank processing hub computers" for McDonalds and Best Buy.  Alexsam further contends that servers at McDonalds, Best Buy, and Toys R Us are "bank processing hub computers" because those servers process gift, debit, and credit card transactions and are maintained by banks, including banks owned by First Data.

## III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 45 allows the issuance of a subpoena to produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control and to request deposition testimony.  The scope of permissible discovery pursuant to Rule 45 is the same as set forth in Rule 26(b)(1).  Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense." *See also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (broadly defining discovery); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (same).

## IV.   REPEATED ATTEMPTS HAVE NOT RESOLVED THE ISSUES IN THIS MOTION

Alexsam served its subpoena on First Data on July 31, 2012.  (Ex. 5.)  The day before, Alexsam had served subpoenas on Concord EFS National Bank, which it learned First Data had acquired, and NTB Bank and NTB Merchant Services, which it understood was a joint venture involving First Data and Northern Trust.  (Exs. 11, 12.)  (Alexsam previously attempted to serve these subpoenas to other addresses before being informed that these entities are now owned by First Data.)

On August 1, 2012, First Data's attorney, David Sipiora of Kilpatrick Townsend, contacted Alexsam about the subpoena to First Data and also stated that he had not yet personally received service of the subpoena.  (Ex. 13 at 4-5.)  This clearly implied that Defendants' counsel had been in contact with First Data and its attorneys about Alexsam's third party discovery, because Alexsam had given the Defendants requisite notice under Rule 45 prior to serving its discovery request.  Alexsam confirmed to Mr. Sipiora that the subpoenas had been served on First Data.  (Ex. 13 at 4.)

First Data then responded on August 6, 2012, requesting Alexsam's infringement contentions as submitted in the Eastern District of Texas (Civil Action No. 2:10-cv-00093-MHS-CMC), including a list of the asserted claims.  (Ex. 14 at 3-4.)  At that time First Data indicated its intention to adhere to the Court's scheduling order particularly with respect to Alexsam's expert report deadline, which at that time was set for September 19, 2012.  (*Id*. at 3.)  Alexsam then expressed concerns about First Data making its own assessments regarding the relevance of

its discovery requests, but in the spirit of cooperation, agreed to provide First Data with infringement contentions pursuant to First Data's request. (*Id*. at 2-3.) Alexsam further agreed to extend the document production deadline to August 27, 2012 and to set a deadline for the requested deposition for no later than September 7, 2012. (*Id*. at 1.) First Data never requested an extension of these deadlines from Alexsam.

First Data provided written objections and responses on August 14, 2012. (Ex. 6.) In its responses First Data agreed to provide only its gift card processing agreements with Defendants McDonalds and Best Buy. It objected to other requests, largely on relevance grounds, and asked for a meet and confer call regarding all of Alexsam's other discovery requests. On August 27, 2012 Alexsam responded to First Data and explained the relevance of its requested discovery. (Ex. 14 at 1.)

On August 15, 2012, the Texas Court granted Alexsam an extension of time to file its opening expert reports until October 23, 2012 (despite Best Buy's objection to the short extension). Alexsam's experts require the facts in First Data's possession in order to properly prepare their reports in advance of the Court's deadline.[2]

On September 4, 2012 counsel for First Data and Alexsam conducted a lengthy meet-and-confer ("M&C") call to discuss First Data's objections. (Ex. 15.) During the M&C, counsel for Alexsam explained the relevance of each request at length. First Data then requested a copy of the claim construction order in the instant case. Without conceding that First Data might make its own determinations about the relevance of this information, and again in the spirit of cooperation, Alexsam provided the requested claim construction. (Ex. 15.) During the M&C,

---

[2] Alexsam did not have an opportunity to apprise First Data of the extension, although First Data has certainly availed itself of extra time without consulting Alexsam. First Data's conduct further suggests interference from the Defendants' counsel in obtaining third party discovery.

counsel for First Data indicated that he would convey the information provided during the call to First Data and agreed to notify Alexsam by Friday September 7, 2012 as to whether First Data would provide the requested discovery. (*Id*.)

At the same time, First Data also requested copies from Alexsam of First Data's own contracts with the Defendants, which had been produced during discovery in this case. After conferring with Defendants' counsel as to any possible objections, Alexsam provided the requested contracts to First Data. (Ex. 20.)

Following the M&C, Alexsam also spoke with attorneys for another involved third party, Bank of America ("B of A"). Alexsam had previously subpoenaed B of A, one of Best Buy's processors of bank card transactions, for the purpose of obtaining facts related to its role in maintaining the computers in Best Buy's point of sale system. B of A's lawyers told Alexsam that First Data likely would also have documents related to Best Buy's card processing, in part as a result of its recent formation of Banc of America Merchant Services, a joint venture with First Data. Alexsam subsequently provided First Data with additional details that it learned for the first time as a result of its communications with B of A regarding Best Buy's card processing to assist First Data in responding to the subpoena.

After the M&C, First Data did not provide any substantive response to Alexsam's repeated requests on this issue for over two weeks. (Ex. 16.) Finally, on September 18, 2012, First Data responded by email that it would stand on its relevance objections in response to Alexsam's discovery requests, and provided no further explanation regarding either its reasoning in this regard or its perplexing two-week absence from these critical discovery negotiations. (Ex 17.)

## V.     ARGUMENT

### A.     Document Requests 3 and 10

Alexsam's Document Request 3 is:

> Documents sufficient to show the transaction data flow path for credit, debit, and gift card transactions, including each hardware component in the transaction path, and the software running on each component, from McDonalds to First Data and through First Data's systems, including through Concord, Buypass, and ValueLink, including network diagrams and message specifications.

Document Request 10 is identical except that it asks for the documents relevant to Defendant Best Buy instead of McDonalds. Document Request 16 is the same except that it asks for the documents relevant to Defendant Toys R Us. Deposition topics 3, 10, and 16 seek similar information.

In response, First Data has made lengthy objections. The crux of First Data's objection again seems to be relevance:

> First Data further objects to this request as seeking information not relevant and not reasonably calculated to lead to the discovery of admissible information to the extent it seeks documents or information related to "credit" and "debit" "transactions."

(Ex. 6 at 3.) First Data's written response indicates no agreement to provide the requested documents, but instead states "First Data is willing to meet-and-confer with Plaintiff regarding the scope of discovery sought in this request." (*Id*.) But Alexsam and First Data met and conferred at length on September 4, 2012, and First Data would not agree to provide the discovery after two weeks' additional consideration. Further discussions are not required by the Rules, and would obviously be futile.

To minimize any burden and to respond to any possible good faith relevance objection, Alexsam has offered to limit the discovery requested to information about how data used in the card transactions travels from Defendants' point of sale systems to First Data, within First Data

9

(including Concord EFS, ValueLink, and other relevant subsidiaries' computers), and back. Alexsam has attempted to obtain this information through other available means. McDonalds' technical Rule 30(b)(6) witness was permitted to answer questions on this topic but took the position that McDonalds has no knowledge of the data flow or of the transaction processing related to that data that First Data undertakes as a contracted agent for the Defendants for its gift, credit, and debit card transactions. Instead, McDonalds' representative testified that McDonalds' knowledge ends when the transaction data leaves McDonalds' servers. Best Buy's witnesses testified similarly. (*E.g.*, Ex. 18, McDonalds transcript at 68:10-13, 130:6-10, 185:3-187:9, 189:12-22, 203:11-16, 236:10-237:4; Ex. 19, Best Buy transcript at 130:13-17, 120:17-121:4.)

Alexsam's Document Request 3 to First Data fairly seeks documents sufficient to show information that the Defendants have stated they cannot provide, *i.e.,* to show how card data travels from Defendants to First Data, where Defendants' gift, credit, and debit card transactions flow within First Data and its many subsidiaries, as well as what fields of card data are transmitted among the various systems components within First Data. (*See*, *e.g.*, Ex. 1, Alexsam '608 patent claim 34 discussing components receiving "activation data" "including said unique identification number and an electronic gift certificate card activation amount."). Alexsam seeks this same information with respect to Defendants McDonalds, Best Buy and Toys R Us.

### B. Document Requests 4 and 11

Alexsam's Document Request 4 is:

> Documents sufficient to show the identity of the specific First Data entity that owns and maintains each component of the First Data system that routes and processes McDonalds gift, credit, and/or debit card transactions.

Document Request 12 is identical except that it asks for the documents relevant to Defendant Best Buy instead of McDonalds. Document Request 16 is the same except that it asks for the documents relevant to Defendant Toys R Us. Deposition topics 4, 12, and 16 seek similar

10

information. In response, First Data has again objected to the request on relevance grounds, as:

> seeking information not relevant and not reasonably calculated to lead to the discovery of admissible information to the extent it seeks documents or information related to 'credit' and 'debit' 'transactions.

(Ex. 6. at 8-9.)

First Data's written response indicates no agreement to provide the requested documents, but instead states, "First Data is willing to meet-and-confer with Plaintiff regarding the scope of discovery sought in this request." (*Id*. at 9.)  But as noted above, Alexsam and First Data have met and conferred at length, and First Data has not agreed to provide the discovery.

Alexsam seeks these documents for the purpose of understanding the facts related to which First Data entity is processing the Defendants' gift, credit, and debit card transactions.  All of these categories of payment cards employ the same point of sale devices, and at relevant points the same computer networks and related infrastructure.  The information requested is clearly relevant to show whether and how the computer networks and infrastructure used for Defendants' prepaid cards include entities which are banks and/or are affiliated with banks, facts that cannot be obtained from other sources in light of First Data's complicated corporate structure, and Defendants' denial of knowledge regarding these facts.

### C.     Document Requests 5 and 11

Alexsam's Document Request 5 is:

Documents reflecting the set-up requirements and procedures for enabling McDonalds to sell its McDonald's Gift Cards supported by First Data (e.g. data transfer protocols, messaging specifications, testing procedures, certification, system modification, encoding schemes).

Document Request 11 is identical to Request 5 except that it asks for documents relevant to Best Buy instead of McDonalds.  Deposition topics 5 and 11 seek similar information.

First Data's objection is again relevance-based, insisting that the request is "seeking information not relevant and not reasonably calculated to lead to the discovery of admissible information." (Ex. 6 at 9.) First Data's written response indicates no agreement to provide the requested documents, but instead states, "First Data is willing to meet-and-confer with Plaintiff regarding the scope of discovery sought in this request." (*Id*. at 9-10.) Again, Alexsam and First Data have met and conferred at length, but First Data has not agreed to provide the requested discovery.

The information Alexsam seeks through this request is directly relevant to the factual question of how First Data (and its banking subsidiaries) maintain the computers in Defendants' point of sale systems, including by setting up computers, specifying their functions, testing them, and certifying them. This discovery is relevant to the presiding Court's claim construction of "bank processing hub computer."

### D.     Document Requests 6 and 12

Alexsam's Document Request 6 is:

> Documents related to the establishment and implementation of the data connection(s) between First Data and Blackhawk, including the transaction data flow path from Blackhawk retailers selling McDonald's gift card transactions to First Data and through First Data's systems, including through Concord, Buypass, and ValueLink, including network diagrams and message specifications.

Document Request 12 is identical to Request 6 above except that it asks for documents relevant to Best Buy instead of McDonalds. Deposition topics 6 and 12 seek similar information.

Blackhawk is an intermediary that operates a linked computer network that facilitates the distribution of Defendants' gift cards by distributing the gift cards to these third party stores (*e.g*., Safeway, Kroger, Publix, Giant Eagle, Supervalu). Those third party stores also connect via Blackhawk's network to First Data.

First Data's objection again is relevance, that is, they assert that Alexsam is "seeking information not relevant and not reasonably calculated to lead to the discovery of admissible information." (Ex. 6 at 10.) Alexsam seeks to understand the basic system of network architecture showing how the retailers, Blackhawk, and First Data are interconnected. The information Alexsam seeks through this request is also directly relevant to the factual question of how First Data (and its banking subsidiaries) connect to and maintain the computers in Blackhawks' systems, including by setting up, monitoring, testing and auditing functions and connections between the various networked computers.

### E.    Document Requests 7 and 13

Alexsam's Document Request 7 is:

Documents discussing the benefits and/ or business performance of McDonalds Gift Card System, including, for example, presentations to McDonalds, business plans, or management reports, including any documents discussing quantitative metrics such as lift, overspend, interest on float, revenue from unused card balances (i.e. dormancy fees, breakage) and/or qualitative benefits such as customer loyalty.

Document Request 13 is identical to Request 7 above except that it asks for the documents relevant to Best Buy instead of McDonalds. Deposition topics 7 and 13 seek similar information.

Although it is not entirely clear, it appears that First Data's objection to this request is that Alexsam seeks confidential information. However, a standard protective order has been in place in the underlying case that allows several levels of confidentiality designations of which First Data may automatically avail itself. (Ex. 21 ¶ 20.) Additionally, in the meet and confer call, Alexsam made clear that it would not seek information about First Data's overall revenues and expenses related to the Defendants' gift cards, but rather only sought information limited to what First Data provided to Defendants about their revenues, expenses, and other benefits from

13

their own gift card programs.  It is known from discovery, for example, that entities such as First Data provide periodic financial and marketing reports to principals like Best Buy and McDonalds to be used for system management, marketing and financial analysis.  One of First Data's functions is to provide accounting relating to the prepaid cards at issue to principals like Best Buy and McDonalds, and it is such financial information relating directly to these Defendants only which is sought by the subpoena.  Alexsam does not request financial information about First Data itself, or for other non-Defendant clients for whom First Data maybe providing similar services.

### F. Document Request 15

Alexsam's Document Request 15 is:

> Documents related to the establishment and implementation of the data connection(s) between First Data and Toys R Us.

Deposition topic 15 seeks similar information to this Document Request.  Topic 15 seeks factual information relevant to how First Data (and its banking entities, including Concord EFS and NTB Bank) maintain Toys R Us' computers.  This information is relevant and discoverable for the reasons explained above, which we will not repeat to avoid burden.

### G. Document Request 19

Alexsam's Document Request 19 is:

> Documents sufficient to show First Data's certification and configuration of computers, including point of sale terminals, and software, for use by McDonalds, Best Buy, and Toys R Us.

Deposition topic 19 seeks similar information to this Document Request.  Topic 19 seeks factual information relevant to how First Data (and its banking entities, including Concord EFS and NTB Bank) maintain Toys R Us's computers.  This information is relevant and discoverable for the reasons explained above, which we will not repeat to avoid burden.

### H. Document Request 20

Alexsam's Document Request 20 is:

> Any agreements or communications by which First Data has undertaken to fully or partially defend and/or indemnify McDonalds or Best Buy with respect to claims of infringement of Alexsam's U.S. Patent Numbers 6,000,608 and 6,189,787.

Deposition topic 20 seeks similar information to this document request. Alexsam seeks to understand if First Data is indemnifying any Defendant in the case because it is relevant to witness bias.

### I. Deposition Topic 22 and 23

Alexsam's Deposition Topic 22 is:

> The First Data entities that provide merchant acquiring services to the McDonalds, Best Buy, and Toys R Us.

Alexsam's Deposition Topic 23 is:

> The role and functions of First Data Merchant Services the identities of the entities with which it has agreements (e.g. banks).

Alexsam seeks to understand which First Data entities are providing services to the Defendants, and whether they are banks or financial institutions. This information is relevant and discoverable for the reasons explained above, which we will not repeat to avoid burden.

## VI. CONCLUSION

For the reasons set forth above, Alexsam respectfully requests that this Court compel First Data to produce the documents requested in Alexsam's subpoena and to provide a witness knowledgeable about the noticed topics.

Respectfully submitted,

Date: September 19, 2012

/s/ Steven C. Schroer
Steven C. Schroer (CO 32982)
scschr@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY
1942 Broadway
Suite 213
Boulder, Colorado 80302
Telephone: (303)402-6966
Facsimile: (303)402-6970

Timothy P. Maloney (IL 6216483)
Tpmalo@fitcheven.com
Alison Aubry Richards (IL 6285669)
Arichards@fitcheven.com
David A. Gosse (IL 6299892)
Dgosse@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

Melissa Richards Smith
Texas State Bar No. 24001351
Melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Plaintiff, Alexsam, Inc.*

## **CERTIFICATE OF CONFERENCE**

Counsel has complied with the meet and confer requirement in Local Rule 7.1 and Fed.R.Civ.P. 37(a)(2)(A)(B) and the above Motion remains opposed. My partner Christine Pompa and I conducted a lengthy telephone conference with John Cadkin, First Data's outside counsel, on September 4, 2012. First Data has not agreed to provide the requested discovery, as set forth above. Thus, discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Alison Aubry Richards
Alison Aubry Richards
*Counsel for Plaintiff, Alexsam, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the following counsel were served with a copy of the above Motion and exhibits thereto by email on September 19, 2012:

David E. Sipiora
John Cadkin
Kilpatrick Townsend & Stockton LLP
Suite 600 | 1400 Wewatta Street | Denver, CO  80202
office 303 405 8525 | fax 303 593 3905
dsipiora@kilpatricktownsend.com
jcadkin@kilpatricktownsend.com

/s/ Alison Aubry Richards
Alison Aubry Richards
*Counsel for Plaintiff, Alexsam, Inc.*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

This is to certify that this document and the exhibits thereto should be filed under seal because it contains material designated as Attorneys' Eyes Only under the Protective Order approved and entered in Civil Action No. 2:10-cv-00093-MHS-CMC (E.D. Tex.) on June 3, 2011.

/s/ Alison Aubry Richards
Alison Aubry Richards
*Counsel for Plaintiff, Alexsam, Inc.*
